UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
In Re:

                          Chapter 7
                          Case No.: 19-44368-nhl
YVETTE C. HOYER,

                Debtor

## AFFIRMATION IN REPLY TO CREDITORS OBJECTION TO THE Debtor's LOSS MITIGATION APPLICATION

    NIGEL E. BLACKMAN, ESQ., herein affirms pursuant to the penalties of perjury as follows:

1. I am an attorney associated with firm, BLACKMAN & MELVILLE, P.C., attorney for the Debtor, YVETTE HOYER.
2. I make this affirmation in Reply to Creditor, BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY Merger to LaSalle Bank, Objection to Debtor's Motion for Loss Mitigation.
3. There are serious discrepancies between the allegations in the creditor's statements and the evidence and differing position by the Debtor and her niece, owner in fee, SHAUNA PAUL.
4. Firstly, in or about February 4, 2010 the Debtor was offered a loan modification by creditor's predecessor in interest, FIRST FRANKLIN LOAN SERVICES. Within that loan modification it specifically stated the nature of the trial loan requirements, See herein as **Exhibit 1** a copy of that offer.
5. The debtor made all payments under that loan offer indicating an acceptance of that offer. Copies of checks paid pursuant to that offer up until after the acceptance is herein attached as **Exhibit 2**.

6. On or about September 7, 2010 the creditor's predecessor, FIRST FRANKLIN LOAN SERVICES approved the loan modification. See herein as **Exhibit 3** a copy of the approval letter. Payments were made even showing until December 2010.
7. On December 5, 2010 the records show that the debtor was sent a statement from the creditor, BANK OF AMERICA, indicating that her account was over due.  See herein as **Exhibit 4**, a copy of the December 5, 2010 correspondence.
8. Some 10 days later creditor, BANK OF AMERICA, sent a Notice to Debtor indicating "NOTICE OF ACCELERATION".  This was where debtor's problem began with this creditor.
9. The city's register indicates that First Franklin Loan Services purported to transfer all interest in the Mortgage obligations, by an Assignment dated January 2009, it was recorded in March 2009. See herein as **Exhibit 5**.
10.  All payment drafts were made to Bank of America. Therefore, bank of America is estopped from denying that only two payments were made.
11.  It is suspected that the Creditor and its servicer / predecessor have an accounting problem that does not in fact involve the debtor, and that the Creditor acted improperly and erroneously in arriving at the false conclusion that Debtor defaulted.  In fact Creditor is the party in Breach.
12.  As a matter of equity the Debtor should be allowed to mitigate her own losses and seek loan modification, rather than suffer the loss of her own property due to the wrongdoing of the Creditor in this case.
13.  The creditor's account should be readjusted accordingly and default issues set aside due to creditor's own negligence in administering its accounts.
14.  Debtor does not have funds that it would otherwise have set aside for mortgage payments due to the fact that she has been fighting foreclosure cases and creditors' claims and

does not have funds for defaulted payments.

### **DEBTOR IS ELIGIBLE TO MODIFY**

15. Irrespective of the above recitation of facts leading to this matter today Debtor is now in a position to qualify even more as she was before.
16. Debtor, YVETTE HOYER, has a recorded monthly income of $4,222.00 as Evidenced by her paycheck in **Exhibit 6**.
17. The Debtor, who additionally resides with co-debtor and fee holder, SHAUNA PAUL, has monthly income of approximately $4222.00 per month, based upon her profit and loss statement. See herein as **Exhibit 7**.
18. ESTEHER PAUL GARRAWAY, Shauna Paul's mother additionally has decided to contribute to the expenses of the household from her income and savings in saving this property. Her pay stubs are included herein as **Exhibit 8**. She is willing to contribute $1,500.00 of her monthly income.
19. Furthermore, the lower floors of premises have previously been used by a non-profit, directed by Shauna Paul, in providing housing to NY City programs and is paid by the City of New York for those housing provisions. The relevant sections of the building are presently under renovation to provide a minimum of 3 and maximum of 6 persons housing which in approximately 60-90 days should be completed and ready for inhabitance by the individuals needed to be placed by the city. This activity yields income to household of an additional $3,000.00-$6,000.00 (approximately $1,000.00 per person).
20. Based upon the above, immediately there shall be available gross monthly income of $12,500.00 in the household for the purposes of maintaining the modified mortgage.
**21.** Using the numbers the Creditor has put forth the Debtor potentially may propose a repayment schedule consisting of a new 30 year fixed mortgage on a new principal of $732,809.51

or any lesser amounts the creditor's calculation may be reduced by. According to interest rates in the present market at 2.5% the debtor's premiums would be at $2,895.48 monthly, for a period of 360 months.

22. There is no reason why, considering all of the circumstances involved in this matter, that this payment restructuring is not unreasonable and is favorable to the Creditor, BANK OF AMERICA.

23. There are issues surrounding the creditor, GUSTAVIA HOMES, LLC., regarding how it derived its title and furthermore, why that loan was never merged with the first mortgage lienholder; however, if the existing judgment is given credence in the end their lien judgment based upon a debt of $215,461.98 may be similarly dealt with by offer of a 30 year fixed mortgage $851.00 monthly for 360 months.

Dated: January 20, 2019

BLACKMAN & MELVILLE, P.C.
By: Nigel E. Blackman, Esq.
11 Broadway, Suite 615
New York, NY 10004
(718) 576-1646
***Mailing Address***
1557 Burford Dr.,#491930
Lawrenceville, GA 30049